[Civ. No. 5001. First Appellate District, Division Two.—December 31, 1924.]

## CORA WALLACE MORTON, Respondent, v. KOHLER & CHASE (a Corporation), Appellant.

[1] SALES—ACTION TO RECOVER PURCHASE PRICE OF PIANO—FINDINGS —JUDGMENT—EVIDENCE.—In an action by a former owner of a piano to recover the alleged purchase price thereof from a piano company, the findings and judgment in favor of plaintiff were proper where the evidence showed that after the piano had been polished and repaired by defendant, for which purpose it had been

left with defendant by plaintiff, and while it was still in defendant's possession, plaintiff executed a bill of sale of the piano to the defendant, and that plaintiff never received any money for the piano and that defendant never offered to return the instrument.

[2] ID. — DELIVERY OF PIANO TO COMPANY FOR REPAIRS—COMPLETION OF REPAIRS—SALE TO COMPANY—POSSESSION.—Although the piano in question was originally delivered to defendant for the purpose of repair, defendant's possession of the piano changed to the possession of an owner at the time the bill of sale was signed, which was after the repair work had been completed.

[3] ID.—CONTRACT OF PURCHASE—OSTENSIBLE AGENCY.—In such action, where the persons with whom plaintiff dealt were placed in the store of defendant for the purpose of dealing with customers in regard to pianos, they had ostensible authority to make the contract of purchase from plaintiff, upon which authority plaintiff was entitled to rely.

[4] ID.—AGENCY — RETENTION OF PIANO—ESTOPPEL.—In such action, where the defendant received and retained the piano and refused to return the same or the proceeds thereof to the plaintiff, it was bound by the contract of purchase regardless of the authority of the agent making the same.

[5] ID.—TIME OF TRIAL—NOTICE OF—SUBSTITUTION OF ATTORNEYS.— In such action, where no written notice of substitution of attorneys was ever served upon the plaintiff or her attorneys, the attorneys for plaintiff, in giving notice of time of trial to defendant's attorneys of record, fulfilled their legal obligation.

(1) 35 Cyc., p. 572, n. 70.   (2) 35 Cyc., p. 336, n. 27.   (3) 2 C. J., p. 586, n. 23.   (4) 2 C. J., p. 500, n. 9.   (5) 6 C. J., p. 645, n. 22.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   Walter Perry Johnson, Judge.   Affirmed.

The facts are stated in the opinion of the court.

G. C. Ringole and Samuel Hamburg for Appellant.

Drown, Leicester & Drown for Respondent.

3.   General rules respecting authority of agent, note, 16 Am. St. Rep. 493.   See, also, 21 R. C. L. 854; 1 Cal. Jur. 737 et seq.
4.   See 21 R. C. L. 930; 1 Cal. Jur. 773.

LANGDON, P. J.—This appeal is by the defendant from a judgment against it for nine hundred dollars, the alleged purchase price of a piano.

[1] It is contended that the evidence is insufficient to sustain the judgment and the findings are contrary to the evidence. This point is clearly without merit. The trial court found that on April 13, 1921, the defendant purchased from the plaintiff a "Steinway Grand Piano" for nine hundred dollars, which was on said day delivered to defendant, and defendant agreed to pay the purchase price thereof, but refused to do so notwithstanding plaintiff's demand for said sum. The record contains the testimony of the plaintiff that prior to April 13, 1921, the piano in question had been delivered to the defendant for the purpose of having it polished and repaired; that on April 13, 1921, plaintiff called at the place of business of defendant. There she talked with Mr. Zeidler, Mr. Ostler, and Mr. Fleischman, persons employed by defendant. Mr. Zeidler was an agent for defendant in the piano department. Plaintiff was also introduced to Mr. Chase by Mr. Fleischman and this is what occurred: "They wanted to know if I would like to sell it (the piano). I had always felt as though I would like a smaller Grand, but they said, 'If you will give it to us, we will sell it and we think we can get a good price for it.'. After thinking it over, and it being in good order, I said I would take nine hundred dollars for it, and then after they had that, young Mr. Zeidler came and asked me to sign a paper." A copy of the writing which plaintiff signed at that time was introduced in evidence and read as follows:

"Kohler & Chase.
"Established 1850.

"April 13, 1921.
"For value received, I hereby sell, set over and assign, all my right, title and interest in one Steinway Grand Piano No. ——— to Kohler & Chase. I hereby certify that the above instrument is my property and free of all encumbrances. Title guaranteed.

"(Signed)   CORA WALLACE MORTON.
"Witness: J. CRIMEN ZEIDLER."

Plaintiff testified that she never received any money for the piano and that defendant never offered to return the instrument.

The foregoing, standing in the record uncontradicted, is sufficient evidence upon which to base the findings and judgment of the court. There is no occasion to discuss at length appellant's position that a memorandum of the essential terms of the contract should have been in writing and that the sale was not taken out of the operation of the statute of frauds by delivery of the property because the property was delivered to defendant for the purpose of repair and not in fulfillment of a contract of sale. [2] The piano was originally delivered to defendant for the purpose of repair, but the repair work had been completed when the contract was made on April 13, 1921, and the bill of sale was signed. At that time defendant's possession changed to the possession of an owner. The situation does not differ in principle from a case where the person engaged to do the repairing was a third person and after the repairs were completed, the piano had been delivered by the repair man to the vendee of the plaintiff.

[3] The argument that plaintiff was required to prove the actual authority of the piano salesman to make the contract for the defendant is also without merit. The persons with whom plaintiff dealt were placed in the store of defendant for the purpose of dealing with customers in regard to pianos. They certainly had ostensible authority, upon which the plaintiff was entitled to rely. Defendant is contending for a rule which would seriously embarrass it in the conduct of its business, for if each person who deals with the Kohler & Chase Company must pause and ascertain the exact scope of the authority of the salesman negotiating the transaction, we apprehend that the trouble and uncertainty involved will cause a material decrease in the number of such transactions. [4] But quite apart from the question of the authority of its agents, the defendant has received and retained the piano and refused to return the same or the proceeds thereof to the plaintiff and it is bound, therefore, by the contract regardless of the authority of the agent making the same.

The last argument made upon appeal is that no notice of the time of trial was served upon the attorney for the defendant five days before the time of trial, and that, therefore, the court was without jurisdiction to proceed with the trial. This point was raised by defendant upon a motion for an order vacating the judgment. Upon that motion there was some conflict in the affidavits filed, and they contain the only evidence upon this subject in the record. We are bound by the determination of the trial court upon this question, which was against the defendant, so we must assume that all conflicts in the affidavits were resolved in favor of the plaintiff. In the light of this assumption we state the facts with reference to the matter to be: That on May 10, 1922, the defendant answered the complaint herein by and through its attorneys, Messrs. Roche and Ibos; that on September 1, 1922, the plaintiff, after giving due notice to said attorneys for defendant, moved to set the cause for trial. The cause was placed upon the reserve calendar of department 14 of the superior court and, thereafter, on September 30, 1922, the court of its own motion fixed February 20, 1923, as the day for the trial of the action; that thereafter, on October 3, 1922, the plaintiff, through her attorneys, duly served upon the said attorneys for defendant written notice that the trial of said action was set for February 20, 1923, and the said attorneys for defendant made a written admission of service of said notice, which was duly filed on October 5, 1922; that on February 20, 1923, when said cause came on for trial, said defendant requested a continuance, and in response to said request, and over the objection of plaintiff, the court placed the cause upon the reserve calendar, to be reset later; that on said twentieth day of February, 1923, G. C. Ringole appeared in the superior court when the action was called for trial and stated to the court that he had been called into the case and that he desired more time to prepare for the trial, and that a continuance was had upon this statement; that the said Roche and Ibos continued to be and were the attorneys of record for the said defendant in said action and that the attorneys for the plaintiff had no notice or knowledge of any substitution of attorneys, but were led to believe from the statements of said G. C. Ringole that he would either be associated with the said

Roche and Ibos or would be substituted thereafter as an
attorney for the defendant; that no notice of substitution
of attorneys was ever at any time served upon the plaintiff
or her attorneys in said action and that neither the plaintiff
nor her attorneys had any notice of the filing of any such
substitution or of the fact that said G. C. Ringole had been
substituted as attorney for defendant until September 5,
1923; that on March 17, 1923, the court of its own motion
set the case for trial on June 11, 1923, but on that day it
was again placed upon the reserve calendar because there
were many cases ahead of it on the calendar; that thereafter
the clerk of the superior court notified the attorneys for the
respective parties, by mail, to appear in the court on June
21, 1923, and on said twenty-first day of June the court set
the case for trial on September 5, 1923; that on August 28,
1923, the attorneys for the plaintiff duly served upon Messrs.
Roche and Ibos, as attorneys for defendant, written notice
that the trial of said action was set for September 5, 1923,
and said Roche and Ibos admitted service of said notice in
writing, as attorneys for defendant, and said attorneys did
not then nor at any time inform plaintiff or her attorneys
that anyone had been substituted in their place and stead
as attorneys for defendant; that said last-mentioned notice
was filed in the office of the clerk of said court on the twenty-
ninth day of August, 1923, and on said last-named day the
clerk in the office of the attorneys for plaintiff met G. C.
Ringole in the city hall in San Francisco, California, and
stated to him that said action would come on for trial on
September 5, and that notice of said trial had been served
on Roche and Ibos, and that said G. C. Ringole actually
knew, at least as early as August 29, 1923, that the trial of
said action had been set for September 5, 1923; that at the
time of trial plaintiff appeared in court by her attorneys
and defendant appeared by Frederick Dubovsky, an attor-
ney at law, who stated that he was associated with Mr. G. C.
Ringole and further stated that the defendant was not ready
to proceed with the trial and asked the court to continue the
trial; that no showing was at that time made as to why the
defendant was not ready to proceed with the trial and the
court informed the said Frederick Dubovsky that it would
allow him time to communicate with Mr. G. C. Ringole and
with the defendant, in order to bring them into court if

they desired to come, and instructed the said Frederick Dubovsky to retire and so communicate with them, and to report to the court; that thereupon said Dubovsky retired from the courtroom and shortly afterward returned and stated that he had communicated with Mr. G. C. Ringole, but that Mr. Ringole was not ready to proceed with the trial; that thereupon the court stated that the trial of said action would have to go on, and that thereupon said action was duly and fully tried in open court.

It seems almost idle to recite all the foregoing details with reference to the setting of the cause for trial, for the reason that the attorneys for the plaintiff were bound by law to recognize Messrs. Roche and Ibos until they received written notice of a substitution of attorneys. Section 285 of the Code of Civil Procedure provides: "When an attorney is changed, as provided in the last section, written notice of the change and of the substitution of a new attorney, or of the appearance of the party in person, must be given to the adverse party. Until then he must recognize the former attorney."

[5] It is admitted by appellant that no written notice of substitution of attorneys was ever served upon the plaintiff or her attorneys. It appears, therefore, that the attorneys for the plaintiff, in giving the notice of time of trial to Messrs. Roche and Ibos, fulfilled their legal obligation, and the error is Mr. Ringole's in omitting to serve a notice of substitution upon the adverse party.

Our statement of facts has been unduly extended to demonstrate not only the fallacy of Mr. Ringole's position as a matter of law, but that as a matter of fact he was not even prejudiced by his own omission to serve the notice of substitution, for he had actual notice of the time of trial and appeared by his associate. This additional fact has some bearing upon the question of the good faith of this appeal.

This matter has been in the courts now for almost three years, during which time the plaintiff has been kept out of the purchase price of her property by a defendant who, apparently, had no defense whatever to offer to her action. The appeal is extremely frivolous and can only have been taken for delay.

The judgment is affirmed, with the addition of one hundred dollars penalty to be taxed as costs against the appellant.

Nourse, J., and Sturtevant, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 26, 1925.

All the Justices concurred.